IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHERI BETH BONNER, | * |
| Plaintiff, | * |
| v. | *   Civil Case No.: MJG-13-1198 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATIONS

The above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF No. 3]. I have considered the parties' cross-motions for summary judgment, and the related filings. [ECF Nos. 18, 19, 22, 24]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that the Court deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Bonner filed a claim for Disability Insurance Benefits ("DIB") on March 30, 2010, alleging a disability onset date of October 31, 2008. (Tr. 16). After a lengthy procedural history, an Administrative Law Judge ("ALJ") issued a July 25, 2016 decision, which determined that

Ms. Bonner was not disabled within the meaning of the Social Security Act (the "Act") during the relevant time frame. (Tr. 13-23). The Appeals Council ("AC") denied Ms. Bonner's request for review, (Tr. 1-4), so the ALJ's 2016 decision constitutes the final, reviewable decision of the Agency.

At step one of the sequential evaluation, the ALJ determined that Ms. Bonner had engaged in substantial gainful activity ("SGA"), and that, therefore, she was not disabled within the meaning of the Act. (Tr. 19-22). Thus, Ms. Bonner's sole argument on appeal is that the ALJ, by wrongfully imputing income to her, erred in concluding that she engaged in SGA. [ECF No. 18 at 4-6].

**LEGAL STANDARD**

Under the Act, the term "disability" is defined as the "inability to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. SGA means work that involves: (a) "doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510. Importantly, work activity "may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or ha[s] less responsibility than when [the claimant] worked before." 20 C.F.R. § 404.1572(a).

"'In evaluating [a claimant's] work activity for [SGA] purposes, [the] primary consideration will be the earnings [the claimant] derive[s] from the work activity.'" *Curry v. Astrue*, No. CV 309-068, 2010 WL 5125923, at *3 (S.D. Ga. Nov. 17, 2010), *report and recommendation adopted*, No. CV 309-168, 2010 WL 5125255 (S.D. Ga. Dec. 9, 2010) (quoting

2

20 C.F.R. § 404.1574(a)(1)). Moreover, "[e]arnings determinations are made with reference to the earnings guidelines (the 'Guidelines') set forth in the Social Security Administration's regulations." *Id.* (citing 20 C.F.R. § 404.1574(b)). "The Guidelines establish monthly earnings amounts for each year . . . and [i]f a claimant's average monthly earnings exceed the amount set forth in the Guidelines, a presumption arises that he is engaging in SGA." *Id.* (citing 20 C.F.R. §§ 404.1574(b)(2)-(3)(i)). Alternatively, "if a claimant's average monthly earnings are equal to or less than the Guideline amounts, he is presumed not to be engaging in SGA." *Id.* (citing 20 C.F.R. §§ 404.1574(b)(2)-(3)(i)).

Finally, a self-employed claimant that has not engaged in SGA under the average monthly earnings inquiry (outlined above) is subject to two additional tests. 20 C.F.R. §404.1575(a). First, a self-employed claimant has also engaged in SGA if the services provided by the claimant are significant. *Id.* Second, a self-employed claimant has engaged in SGA if "the work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in [the Guidelines] when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work" being performed by the claimant. *Id.*

**DISCUSSION**

In the instant case, Ms. Bonner argues that the ALJ found SGA by erroneously determining that her countable income exceeded the Guidelines and that "there was no consecutive 12-month period without SGA between the alleged onset date and the date last insured[.]" (Tr. 21); [ECF No. 18 at 5]. After her alleged onset date, Ms. Bonner worked by performing mortgage closings as a notary on a contractual basis. [ECF No. 18 at 1-2]; (Tr. 921). She claims that the ALJ erred in imputing income to her and that "she never made more than the

SGA threshold since" her date of disability." [ECF No. 18 at 5]. I agree that the ALJ's decision is not supported by substantial evidence, and I therefore recommend remand.

Though Ms. Bonner alleged a disability onset date of October 31, 2008, and "did not work from October 2008 through April 2009," she subsequently earned $10,234.47 in the remaining months of 2009. [ECF No. 18 at 1-2]. Thus, pursuant to SSR 83-85, Ms. Bonner's average "countable earnings" equaled $1,279.31 per month over the eight month period in which she worked in 2009. *See* SSR 83-85, 1983 WL 31257 (S.S.A. Jan. 1, 1983). Because Ms. Bonner's average earnings exceeded the 2009 Guidelines (*i.e.*, $980.00 per month), the ALJ, relying on the presumption, correctly found that there was "no continuous 12-month period without SGA for 2008-2009." (Tr. 21).[1]

However, there is not substantial evidence to support the ALJ's conclusion that Ms. Bonner engaged in SGA from 2010 through 2013. The SGA limits for the years 2010-2013 were $1,000.00, $1,000.00, $1,010.00, and $1,040.00 per month, respectively. [ECF No. 24 at 3]; (Tr. 21). As the ALJ conceded, Ms. Bonner's *reported* earnings for 2010 were only $4,984.00. (Tr. 21). Despite Ms. Bonner's *reported* income falling below the Guidelines, the ALJ made a finding of SGA by relying upon treatment records and Ms. Bonner's admissions. *Id.* Specifically, the ALJ cited treatment notes from Dr. Peter G. Uggowitzer, which state that, as of April 26, 2010, Ms. Bonner was "[c]urrently employed full-time." *Id.*; (Tr. 679). Likewise, the ALJ cited Ms. Bonner's statements: (1) that, by May 7, 2010, she had performed 30 closings for the year; (2) that, as of October 29, 2010, she was "currently" performing "mortgage closings on a contractual basis;" (3) that she earned between $60-80 per closing; and (4) that "her workload" was anywhere from 12-18 closings per month. (Tr. 21, 52, 71-72, 398, 921-23). Averaging Ms.

---

[1] Even under Ms. Bonner's contention that she worked for a "9 month period" in 2009, her average earnings of $1,137.16 per month over those nine months would, nonetheless, remain above the Guidelines. *See* [ECF No. 18 at 1-2].

4

Bonner's fee per closing and number of closings per month ($70 per closing, 15 closings per month), the ALJ concluded that she earned, on average, $1,050.00 per month, thus constituting SGA for the years 2010-2013. (Tr. 21) (stating that "[i]ncome averaging [was] appropriate for 2011-2014 pursuant to SSR 83-35.").

However, the ALJ mischaracterized the evidence when imputing income to Ms. Bonner for the years 2010-2013. While Ms. Bonner had the opportunity to perform approximately 12-18 closings per month, (Tr. 52, 71), she testified to completing an average of only six closings per month, turning down "two-thirds" of the opportunities for "psychiatric reasons." (Tr. 52, 71-72). Moreover, Ms. Bonner's May 7, 2010 claim that she had performed 30 closings thus far in 2010 (cited by the ALJ) lends credence to her contention that she was performing roughly six closings per month. (Tr. 21, 398).[2] Overall, the record provides negligible evidence of Ms. Bonner's earned income for closings performed from 2010-2013. As such, I find that there is not substantial evidence to support the ALJ's conclusion that Ms. Bonner earned $1,050.00 a month, on average, for the years 2010-2013 and, therefore, was engaged in SGA. *See Curtis v. Sullivan*, 764 F. Supp. 119, 120 (N.D. Ill. 1991) (holding that, in light of "scant evidence" of employment, the ALJ erred in reaching his own conclusion of SGA by imputing income to the claimant). The fact that the ALJ's imputed income amount just barely exceeds the SGA threshold highlights the need for adequate evidentiary support for that conclusion. Accordingly, I recommend remand for the ALJ to fulfill his duty of explanation. In so recommending, I express no opinion regarding whether the ALJ's ultimate conclusion that Ms. Bonner is not entitled to benefits is correct.

---

[2] 30 closings over the first 17 weeks of the years yields 1.76 closings per week, or approximately seven closings per month.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment [ECF No. 18];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 15];

3. the Court REVERSE IN PART due to inadequate analysis the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g);

4. the Court REMAND this case for further proceedings in accordance with this opinion; and

5. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: December 14, 2017     /s/
                             Stephanie A. Gallagher
                             United States Magistrate Judge